## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| Jenny Rader, *on behalf of herself and all others similarly situated*, | |
| Plaintiff, | Civil Action No.: |
| v. | **CLASS ACTION COMPLAINT** |
| Sandia Laboratory Federal Credit Union, | |
| Defendants. | |

Plaintiff Jenny Rader ("Plaintiff" or "Rader"), individually and on behalf of all others similarly situated, sues Sandia Laboratory Federal Credit Union ("SLFCU"), and states as follows:

## <u>INTRODUCTION</u>

1.     Plaintiff seeks monetary damages, restitution, and injunctive relief due to SLFCU's policy and practice of assessing an overdraft fee on transactions when there was enough money in the checking account to cover (pay for) the transactions presented for payment. The charging for such overdraft fees breaches SLFCU's contract with its customers, who include Plaintiff and the members of the Class.

2.     The charging for such overdraft fees also violates federal law. Because SLFCU failed to describe its actual overdraft service in its Opt-In Contract (because the language in its Opt-In Contract fails to describe the actual method by which SLFCU calculates its overdraft fees, instead describing a method under which overdrafts only result when there is not enough money in the account to pay for a transaction), Regulation E (12 C.F.R. §§1005.17 et seq.) of the Electronic Fund Transfer Act (15 U.S.C.A. §§ 1693 et seq.) prohibited SLFCU from assessing overdraft fees

1

for automated teller machine (ATM) and non-recurring debit card transactions (12 C.F.R. §1005.17(b)(1)(i)), but SLFCU did so anyway.

## PARTIES, JURISDICTION AND VENUE

3.      Plaintiff Jenny Rader is and at all times mentioned herein was an individual person residing in Dallas, Texas.

4.      Defendant SLFCU is a federally chartered credit union with headquarters located in Albuquerque, New Mexico and branch offices located in both New Mexico and California.

5.      This Court has federal question subject matter jurisdiction under 28 U.S.C. §1331.

6.      In addition, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) as the putative class contains members who are citizens of a different state than SLFCU and because the amount in controversy is likely to exceed $5,000,000 given the size of SLFCU and the amount of assets under its control.

7.      Personal jurisdiction and venue in this district are proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides here and a substantial part of the events giving rise to the claim occurred here.

## FACTUAL ALLEGATIONS

### A.  SLFCU's Unlawful Charges of Overdraft Fees

8.      SLFCU is a credit union with branch offices in New Mexico and California.   It has more than $2.6 billion in assets.[1]

9.       SLFCU offers its consumer banking customers a checking account. One of the features of a SLFCU checking account is a debit card, which can be used for a variety of transactions including the purchasing of goods and services. In addition to receiving a debit card,

---

[1]  *See* https://www.slfcu.org/AboutUs (last visited June 3, 2020).

other features of a SLFCU checking account include: the ability to write checks; withdraw money from ATMs; schedule Automated Clearing House (ACH) transactions (certain recurring payments); and other types of transactions that debit from a checking account.

10.    In connection with its processing of debit transactions (debit card, ATM, check, ACH, and other similar transactions), SLFCU assesses overdraft fees to customer accounts when it determines that a customer's account has been overdrawn.

11.    Credit unions like SLFCU have increasingly turned to overdraft fees as a substantial source of income. According to a June 2013 report by the Consumer Financial Protection Bureau entitled "CFPB Study of Overdraft Programs," credit unions generated $7.4 billion in overdraft fees in 2012.[2]   That reflects an increase of 15% in overdraft fees from 2007 to 2012.[3]   Overdraft and Non-Sufficient Funds fees now generate over 50% of all fees, and constitute 11.6% of net income for credit unions.[4]

12.    The high cost of an overdraft fee is usually unfairly punitive. In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrew their account by mistake.[5]   More than 60% of the transactions that resulted in a large overdraft fee were for less than $50.[6]   In addition, more than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program, and more than two-thirds of customers would have preferred

---

[2]  *See* https://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf (last visited June 3, 2020) at p. 14.
[3]  *Id.* at p. 16.
[4]  *Id.* at p. 15.
[5]  *See* May 2012 Pew Charitable Trust report entitled "Overdraft America: Confusion and Concerns about Bank Practices," p. 4, available at
https://www.pewtrusts.org/~/media/legacy/uploadedfiles/pcs_assets/2012/SCIBOverdraft20America1pdf.pdf (last visited June 3, 2020).
[6]  *See* June 2014 Pew Charitable Trust report entitled "Overdrawn: Persistent Confusion and Concern About Bank Overdraft Practices," p. 8, available at
http://www.pewtrusts.org/~/media/assets/2014/06/26/safe_checking_overdraft_survey_report.pdf (last visited June 3, 2020).

the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee.[7]

13.     Moreover, the customers who are assessed these fees are often the most vulnerable customers. Indeed, younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees.[8]   For instance, a 25 year-old is 133% more likely to pay an overdraft penalty fee than a 65 year-old.[9]   In addition, more than 50% of the customers assessed overdraft fees earned under $40,000 per year[10] and non-whites are 83% more likely to pay an overdraft fee than whites.[11]

14.     The federal government has stepped in to provide some protections to customers with respect to abusive overdraft policies. Specifically, in 2010, the Federal Reserve Board enacted regulations which only allowed financial institutions the authority to charge overdraft fees on ATM and one-time debit card transactions if the institution first obtained the affirmative consent of the customer to do so. *See* 12 C.F.R. § 1005.17 (Regulation E's "Opt-In Rule").

15.     Under Regulation E's Opt-In Rule, to qualify as affirmative consent, the following criteria must be satisfied:

- The consumer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft;

- The opt-in consent must be obtained separately from other consents and acknowledgements;

- The consent cannot serve any purpose other than opting into the overdraft program;

---

[7] *Id.* at pp. 5, 10.
[8] *Id.* at p. 1.
[9] *Id.* at p. 3.
[10] *Id.* at p. 4.
[11] *Id.* at p. 3.

- The consent cannot be a pre-selected checked box; and

- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

12 C.F.R. § 1005.17(b) and (d). If the financial institution does not obtain proper, affirmative consent from the customer that meets all of the requirements of Regulation E's Opt-in Rule, then it is not permitted to charge overdraft fees on ATM and one-time debit card transactions.

16.    At all relevant times, SLFCU has had an overdraft program in place for assessing overdraft fees which is: (1) contrary to the express terms of its contract with members; (2) contrary to SLFCU's representations about its overdraft program to its members; and (3) contrary to its members' expectations regarding the assessment of overdraft fees.

17.    Under SLFCU's contracts with its members, SLFCU has promised that it will only assess an overdraft fee against an account when SLFCU pays a transaction that results in a negative balance for that account.

18.    SLFCU entered into a written contract with Plaintiff and its other customers titled "Membership and Account Agreement" (the "Membership Agreement")[12] The Membership Agreement contains a promise that SLFCU will not charge overdraft fees for any type of transaction where there is enough money in the account to pay for the transaction.   It states, "If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, transaction, or other item, plus any applicable fee, that is posted to your account, we may return the item or pay it, as described below." (Membership Agreement at Section 14).  However, nowhere in the Membership Agreement are the terms "available funds" or "not sufficient" funds defined.   In addition, nowhere is it stated in the Membership

---

[12]  A copy of the Membership Agreement is available at https://www.slfcu.org/files/slfcu17/1/file/Disclosures/MembershipAgreement.pdf and attached hereto as Exhibit A.

Agreement that overdraft fees could be imposed as a result of holds placed on funds earmarked for pending transactions—the very practice this case confronts.

19.    SLFCU entered into a second agreement with Plaintiff and its other customers, which is titled "What You Need to Know About Overdrafts, Overdraft Fees and Courtesy Pay" and is referred to herein as the "Opt-In Contract."[13]   SLFCU was required by Regulation E to provide this agreement to Plaintiff and the class members, which governs the terms under which SLFCU may assess Plaintiff and the class members overdraft fees for ATM and non-recurring debit card transactions and provides them with the means to accept those terms.   In the Opt-In Contract, SLFCU promises that: "An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." (Opt-In Contract.)   This promise means that SLFCU is not authorized to assess an overdraft fee – because an overdraft has not occurred – unless there is not enough money in the customer's account to cover the transaction. It does not in any way state that there will be deductions made from the money in the customer's account arising from holds placed on pending debit card transactions to create a different artificial balance, separate and apart from the actual money in the account, on which overdraft fees would be assessed, nor does it state that holds placed on funds in the account arising from deposit holds would reduce the amount of money in the account for the purposes of determining when an overdraft has occurred, and an overdraft fee will be assessed. Because the Opt-In Contract does not describe SLFCU's actual overdraft service, the Opt-In Contract fails to comply with the requirements of Regulation E.   The Opt-In Contract nonetheless contains promises to which SLFCU is contractually bound.

---

[13]  A copy of the Opt-In Contract is available at
https://www.slfcu.org/files/slfcu17/1/file/Disclosures/Overdraft_Discl.pdf and attached hereto as Exhibit B.

20.    However, directly contrary to this promise, SLFCU's policy and practice is to ignore whether there is money in the account or a negative balance.    Instead, SLFCU's policy and practice is, and at all times relevant herein has been, to assess overdraft fees based on an artificial and hypothetical internal calculation by which it deducts holds it has placed on either pending debit card transactions or deposits, rather than use the actual money in the account as required by the Opt-In Contract, or the funds in the account as required by the Membership Agreement, without deductions for pending debit card transactions to determine whether an overdraft has occurred.

21.    The artificial balance created by SLFCU which it used for purposes of assessing an overdraft fees is not the actual money in a customer's account. Rather, upon information and belief it is the balance in a customer's account minus anticipated future debits (debits that may or may not occur). It might also take into account deposit holds. This practice is directly contrary to SLFCU's Opt-In Contract and the Membership Agreement and has resulted in SLFCU improperly charging unlawful overdraft fees.    Indeed, SLFCU created this "artificial balance" to increase overdraft fees it charged to its customers.

22.    SLFCU's practice of charging overdraft fees, even when there is enough money in the account to cover a transaction presented for payment, is inconsistent with how SLFCU expressly describes the circumstances under which overdraft fees are assessed.

23.    Further, SLFCU has charged its customers, including Plaintiff and the members of the Class, overdraft fees for ATM and/or non-recurring debit card purchases, without obtaining their appropriate consent to do so, in violation of Regulation E, and in violation of its contractual promises that it would not charge overdraft fees for ATM and non-recurring debit card purchases without obtaining its customers' separate consent, because the Opt-In Contract

7

did not describe what SLFCU was actually doing, as required by Regulation E.

24.    Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them in accordance with the terms and conditions of the contracts.

25.    Meanwhile, Plaintiff and the Class members could not have anticipated the harm resulting from Defendant's practice throughout the class periods. The money in the account, without deduction for holds on pending transactions or on deposits, as stated (sometimes called the "ledger balance"),[14] is the official balance of the account. It is the balance provided to the customer in monthly statements, which is the official record of activity in the account. It is the balance used to determine interest on deposits and any minimum balance requirements. Further, based on information and belief, it is the balance used by SLFCU to report its deposits to regulators, shareholders and the public. It is the deposit balance provided to regulators in call reports and reserve reports. It is the balance used in financial reports to shareholders and the balance used for internal financial reporting. It is the balance used by credit reporting agencies in providing credit ratings of SLFCU. Yet SLFCU did not use the ledger balance when calculating overdraft fees.

**B. <u>Unlawful Overdraft Fees Assessed to Plaintiff Jenny Rader</u>**

26.    Plaintiff was harmed by SLFCU's practice of charging overdraft fees when there was money in Plaintiff's account to cover the transaction. Plaintiff entered into agreements with SLFCU, where SLFCU agreed it would only charge overdraft fees if there was not money to cover the transaction (negative balance) at time of posting.

---

14 *See* Consumer Financial Protection Bureau Supervisory Highlights, Winter 2015 at p. 8, available at https://files.consumerfinance.gov/f/201503_cfpb_supervisory-highlights-winter-2015.pdf (last visited June 3, 2020) ("A ledger-balance method factors in only settled transactions in calculating an account's balance; an available-balance method calculates an account's balance based on electronic transactions that the institutions have authorized (and therefore are obligated to pay) but not yet settled, along with settled transactions. An available balance also reflects holds on deposits that have not yet cleared.").

27.    However, SLFCU breached these agreements, and in so doing also violated Regulation E.

28.    For instance, on January 21, 2019, Plaintiff incurred *six* overdraft fees of $25.00 each, for a total of $150.00, where at the time of posting and paying each transaction, there were sufficient funds and money in the account to pay and cover the transactions:



**Account Statement**

| Account | From | To | Page |
|---|---|---|---|
|  | 01/01/2019 | 01/31/2019 | 6 |

**Checking - Money Manager (continued)**

| Date | Description | Amount | Balance |
|---|---|---|---|
| Jan 21 | Card purchase | 48.70- | 297.03 |
|  | PIZZA HUT 027270 DALLAS TX |  |  |
| Jan 21 | Non-Sufficient Funds Paid Fee | 25.00- | 272.03 |
| Jan 21 | Card purchase | 10.00- | 262.03 |
|  | J2 *MYFAX SERVICES 877-437-3607 CA |  |  |
| Jan 21 | Non-Sufficient Funds Paid Fee | 25.00- | 237.03 |
| Jan 21 | Card purchase | 18.43- | 218.60 |
|  | SHELL OIL 12448040001 DALLAS TX |  |  |
| Jan 21 | Non-Sufficient Funds Paid Fee | 25.00- | 193.60 |
| Jan 21 | Card purchase | 47.24- | 146.36 |
|  | MV STORE, INC 718-7287838 NY |  |  |
| Jan 21 | Non-Sufficient Funds Paid Fee | 25.00- | 121.36 |
| Jan 21 | Card purchase | 0.99- | 120.37 |
|  | APL*ITUNES.COM/BILL 800-275-2273 CA |  |  |
| Jan 21 | Non-Sufficient Funds Paid Fee | 25.00- | 95.37 |
| Jan 21 | Card purchase | 20.12- | 75.25 |
|  | TACO BELL #027874 DALLAS TX |  |  |
| Jan 21 | Non-Sufficient Funds Paid Fee | 25.00- | 50.25 |

29.    As can be seen from the above figure, on January 21, 2019 Plaintiff's balance ranged from $297.03 to $50.25; the balance was never below $0.00.    Nonetheless, SLFCU still charged Plaintiff *__six__* overdraft fees.

30.    This was not an isolated instance.    The following month on February 11, 2019 Plaintiff incurred two overdraft fees of $25.00 each where at the time of posting and paying each transaction, there were sufficient funds and money in the account to pay and cover the

transactions.    Then the following day on February 12, 2019, Plaintiff again incurred three more overdraft fees of $25.00 each where at the time of posting and paying each transaction, there were likewise sufficient funds and money in the account to pay and cover the transactions:



| | Account Statement | | |
| --- | --- | --- | --- |
| Account | From | To | Page |
| ▮ | 02/01/2019 | 02/28/2019 | 3 |

**▮ Checking - Money Manager (continued)**

| Date | Description | Amount | Balance |
| --- | --- | --- | --- |
| Feb 11 | Card purchase CEFCO 0084 XXXXXXXXXXXXX6468 | 2.15- | 84.84 |
| Feb 11 | Fee Non-Sufficient Funds Paid Fee | 25.00- | 59.84 |
| Feb 11 | Card purchase EXXONMOBIL 48069561 XXXXXXXXXXXXX6468 | 14.48- | 45.36 |
| Feb 11 | Fee Non-Sufficient Funds Paid Fee | 25.00- | 20.36 |
| Feb 11 | Card purchase TARGET 00017848 XXXXXXXXXXXXX3591 | 59.73- | 39.37- |
| Feb 11 | Fee Non-Sufficient Funds Paid Fee | 25.00- | 64.37- |
| Feb 12 | Card purchase return Adjustment PRICELINE*RENTAL CAR XXXXXXXXXXXXX6468 | 180.22 | 115.85 |
| Feb 12 | POS Card purchase Microsoft XXXXXXXXXXXXX3591 | 10.91- | 104.94 |
| Feb 12 | Fee Non-Sufficient Funds Paid Fee | 25.00- | 79.94 |
| Feb 12 | Card purchase QT 933 08009334 XXXXXXXXXXXXX3591 | 40.32- | 39.62 |
| Feb 12 | Fee Non-Sufficient Funds Paid Fee | 25.00- | 14.62 |
| Feb 12 | Card purchase LITTLE CAESARS 1309 00 XXXXXXXXXXXXX3591 | 6.50- | 8.12 |
| Feb 12 | Fee Non-Sufficient Funds Paid Fee | 25.00- | 16.88- |

31.    This happened yet again on March 30, 2019, where Plaintiff incurred three overdraft fees of $25.00 where at the time of posting and paying each transaction, there were sufficient funds and money in the account to pay and cover the transactions:

| | | | |
| --- | --- | --- | --- |
| Mar 30 | Card purchase 7-ELEVEN 37264 XXXXXXXXXXXXX3591 | 7.92- | 125.78 |
| Mar 30 | Fee Non-Sufficient Funds Paid Fee | 25.00- | 100.78 |

| Date | Description | Amount | Balance |
|------|-------------|--------|---------|
| Mar 30 | Card purchase 7-ELEVEN 26885 XXXXXXXXXXX3591 | 19.66- | 81.12 |
| Mar 30 | Fee Non-Sufficient Funds Paid Fee | 25.00- | 56.12 |
| Mar 30 | Card purchase 7-ELEVEN 26885 XXXXXXXXXXX3591 | 15.96- | 40.16 |
| Mar 30 | Fee Non-Sufficient Funds Paid Fee | 25.00- | 15.16 |

32.  Most recently, on June 1, 2020, Plaintiff incurred three overdraft fees of $25.00

each where at the time of posting and paying each transaction, there were sufficient funds and

money in the account to pay and cover the transactions:



33.     A complete review of Plaintiff's records will show dozens of instances of Plaintiff being improperly charged overdraft fees for transactions despite having sufficient funds and money in her account to pay the transaction.

34.     Moreover, the assessment and unilateral taking of improper overdraft fees further reduces the balance and amount of funds in the account, resulting in and aggressively causing subsequent, otherwise non-overdraft transactions to be improperly treated as transactions for which SLFCU assesses further overdraft fees. This practice was deemed to be deceptive and substantially harmful to customers by the Consumer Finance Protection Bureau, which made the following conclusions in its studies:

> Examiners also observed at one or more institutions the following sequence of events after the institutions switched balance-calculation methods: a financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive.

*See* Consumer Financial Protection Bureau Supervisory Highlights, Winter 2015 at pp. 8-9.

35.     A review of the transactions on April 20, 2019 provide a clear example of this tactic:

| Apr 20 | Card purchase RACETRAC 2370 00023705 XXXXXXXXXXXX3591 | 14.37- | 40.41 |
| Apr 20 | Fee Non-Sufficient Funds Paid Fee | 25.00- | 15.41 |
| Apr 20 | Card purchase TARGET 00017848 XXXXXXXXXXXX6468 | 37.85- | 22.44- |
| Apr 20 | Fee Non-Sufficient Funds Paid Fee | 25.00- | 47.44- |

36.    Had SLFCU not improperly charged Plaintiff a $25.00 fee when she made a purchase in the amount of $14.37, then she would have had a balance in the amount of $40.41 when she made her next purchase in the amount of $37.85, and the account would not have been pushed into overdraft status.    However, because SLFCU charged her $25.00, her balance lowered to $22.44, which in turn caused her to incur yet another overcharge fee in the amount of $25.00 when she made her next purchase and which pushed her into overdraft status.

37.    Because the Opt-In Contract failed to provide the full and accurate disclosures to Plaintiff required by Regulation E, SLFCU failed to obtain Plaintiff's fully informed consent as required by Regulation E in order for SLFCU to be authorized to charge such overdraft fees.

38.    Because SLFCU was not legally authorized to enroll Plaintiff into the overdraft program for non-recurring debit card and ATM transactions, SLFCU violated Regulation E when it assessed any overdraft fees against Plaintiff for non-recurring debit card and ATM transactions.

39.    Plaintiff was harmed by this practice when she was assessed overdraft fees for nonrecurring debit card and ATM transactions.

## CLASS ALLEGATIONS

### A.  The Class

40.    Plaintiff brings this claim pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf the following Classes:

**The Positive Balance Class: All United States residents who have or have had accounts with SLFCU who incurred an overdraft fee or overdraft fees when the balance in the checking account was sufficient to cover the transactions during the period beginning six years preceding the filing of this Complaint and ending on the date the Class is certified.**

**The Regulation E Class: All United States residents who have or have had accounts with SLFCU who incurred an overdraft fee or overdraft fees for**

**ATM or non-recurring debit card transaction(s) during the period beginning August 15, 2010 and ending on the date the Class is certified.**

41.     Plaintiff represents and is a member of the Classes.   Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family.

**B.  Numerosity**

42.     The members of the Class are so numerous that joinder of all members would be impracticable. While the exact number of Class members is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members based on the fact that SLFCU has more than 110,000 members and more than $2.6 billion in assets.

43.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.   Identification of the class members is a matter capable of ministerial determination from Defendant's records.

**C.  Common Questions of Law and Fact**

44.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.   These questions include:

   a.   Whether, pursuant to the Opt-In Contract, Defendant promised Plaintiff and the Class members that it would not charge an overdraft fee if there was enough money in the account to cover the transaction;

   b.   Whether, pursuant to the Membership Agreement, Defendant promised Plaintiff and the Class members that it would not charge an overdraft if there

was enough money in the account to cover the transaction;

c.   Whether Defendant breached the Opt-In Contract or the Membership

Agreement by assessing overdraft fees for transactions when customers'

checking accounts contained enough money to cover the transactions;

d.   Whether the language in the Opt-In Contract— "An overdraft occurs when you

do not have enough money in your account to cover a transaction, but we pay it

anyway."—described Defendant's overdraft service pursuant to which

Defendant assessed overdraft fees; and

e.   Whether Defendant is liable under claims of breach of the covenant of good

faith and fair dealing, unjust enrichment and money had and received; and

f.   Whether Defendant's conduct violated 12 C.F.R. § 1005.17.

**D.  Typicality**

45.    Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.   In addition, the evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and all of the Class members are substantially the same because all of the relevant agreements between Defendant and its customers, including the Opt-In Contract and the Membership Agreement, were identical as to all relevant terms, and also because the challenged practices of charging customers for overdraft fees when there were sufficient funds in the accounts to pay for the transactions at issue, are uniform for Plaintiff and all Class members. Accordingly, in pursuing her own self-interest in litigating her claims, Plaintiff will also serve the interests of the other Class members.

**E.  Protecting the Interests of the Class Members**

46.    Plaintiff will fairly and adequately protect the interests of the Class and has retained

counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this action.

**F.  Proceeding Via Class Action is Superior and Advisable**

47.    A class action is the superior method for the fair and efficient adjudication of this controversy.   Because the injuries suffered by the individual Class members are relatively small, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class members to individually seek redress for Defendant's wrongful conduct. Even if any individual person or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiff and the Class members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

## COUNT I –BREACH OF THE OPT-IN CONTRACT

48.    Plaintiff incorporates the foregoing as if fully set forth herein.

16

49.    Plaintiff and each of the Class members entered into the Opt-In Contract with Defendant covering the subject of overdraft transactions. This contract was drafted by and is binding upon Defendant.

50.    In the Opt-In Contract, Defendant promised that SLFCU would assess overdraft fees only when there was not enough money in the account to cover the transaction.

51.    The Opt-In Contract incorporated by reference all applicable laws regarding its subject matter, including 12 C.F.R. § 1005.17, which mandates that all opt-in contracts for assessing overdraft fees for ATM and non-recurring debit card transactions be separate from the account agreement and accurately describe the overdraft fee practice, and bars financial institutions from assessing fees for non-recurring debit card and ATM transactions if they have not fully complied with that section's requirements.

52.    Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the Opt-In Contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

53.    Defendant breached the express terms of the Opt-In Contract by, *inter alia*, assessing overdraft fees when there was money in the account to cover the transaction or transactions at issue.

54.    As a proximate result of Defendant's breach of the Opt-In Contract, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

### COUNT II – BREACH OF THE MEMBERSHIP AGREEMENT

55.    Plaintiff incorporates the foregoing as if fully set forth herein.

17

56. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

57. Plaintiff and each of the Class members entered into the Membership Agreement contract with Defendant covering the subject of overdraft transactions. This contract was drafted by and is binding upon Defendant.

58. In the Membership Agreement, Defendant promised that SLFCU would assess overdraft fees only when "funds" in the account were not "sufficient" to complete the transaction at issue. Nowhere did the Membership Agreement contract state that it would deduct pending debit card transactions for purposes of determining "sufficient funds" when assessing an overdraft fee.

59. Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the Membership Agreement, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

60. Defendant breached the express terms of the Membership Agreement contract by, inter alia, assessing overdraft fees when there were sufficient funds in the account to cover the transaction or transactions at issue.

61. As a proximate result of Defendant's breach of the Membership Agreement contract, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## COUNT III – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

62. Plaintiff incorporates the foregoing as if fully set forth herein.

63. Plaintiff and each of the Class members entered into two contracts with Defendant

covering the subject of overdraft transactions, which have been identified herein as the Opt-In Contract and Membership Agreement. These contracts were drafted by and are binding upon Defendant.

64.    In the contracts, Defendant promised that SLFCU would assess overdraft fees for ATM and debit card transactions only when there was not enough money in the account to cover the transaction.

65.    The contracts incorporated by reference all applicable laws regarding their subject matter, including 12 C.F.R. § 1005.17, which mandates that the Opt-In Contract for assessing overdraft fees for ATM and non-recurring debit card transactions be separate from the account agreement and accurately describe the overdraft fee practice.

66.    Further, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.   The material terms of the contracts also included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contracts.

67.    Plaintiff and the Class members have performed all conditions, covenants, and

19

promises required by each of them on their part to be performed in accordance with the terms and conditions of the contracts, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

68.    Defendant breached the implied covenant of good faith and fair dealing based on its practices of assessing fees when there was enough money in the account to cover the transaction, failing to provide an accurate description of its overdraft program in its Membership Agreement, failing to provide an accurate description of its overdraft program for non-recurring debit and ATM transactions in its Opt-In Contract, and failing to permit its customers to choose whether to opt-in to the overdraft program for non-recurring debit and ATM transactions. In so doing, and in implementing its overdraft program for the purpose of increasing and maximizing overdraft fees, Defendant executed a contractual obligation in bad faith, depriving Plaintiff and the Class members of the full benefit of the contract.

69.    As a proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

### COUNT IV – UNJUST ENRICHMENT / RESTITUTION

70.    Plaintiff incorporates the foregoing as if fully set forth herein.

71.    As a result of the wrongful misconduct alleged above, Defendant unjustly received millions of dollars in overdraft fees.

72.    The Consumer Finance Protection Bureau has concluded that inadequate disclosure of the type of balance-calculation used to determine overdraft transactions and their resultant fees that create additional overdraft fee harm constitutes an unfair, deceptive, or abusive acts or practices. (CFPB Supervisory Highlights, Winter 2015, at p. 9 ("Furthermore, because consumers

were substantially injured or likely to be so injured by overdraft fees assessed contrary to the

overall net impression created by the disclosures (in a manner not outweighed by countervailing

benefits to consumers or competition), and because consumers could not reasonably avoid the fees

(given the misimpressions created by the disclosures), the practice of assessing the fees under

these circumstances was found to be unfair.").)

73.    Because Plaintiff and the Class members paid the erroneous overdraft fees assessed

by Defendant, Plaintiff and the Class members have conferred a benefit on Defendant, albeit

undeservingly. Defendant has knowledge of this benefit, as well as the wrongful circumstances

under which it was conveyed, and yet has voluntarily accepted and retained the benefit conferred.

Should it be allowed to retain such funds, Defendant would be unjustly enriched. Therefore,

Plaintiff and the Class members seek relief as set forth in the Prayer below.

## COUNT V – VIOLATON OF THE ELECTRONIC FUND TRANSFERS ACT (REGULATION E) 12 C.F.R. § 1005, *ET SEQ.*

74.    Plaintiff incorporates the foregoing as if fully set forth herein.

75.    By charging overdraft fees on ATM and nonrecurring transactions, SLFCU

violated Regulation E, whose "primary objective" is "the protection of individual consumers" and

which "carries out the purposes of the Electronic Fund Transfer Act"  (12 C.F.R. §1005.1(b)),

whose express "primary objective" is also "the provision of individual consumer rights" (15

U.S.C. §1693(b)).

76.    Specifically, the charges imposed by SLFCU violated what is known as the "Opt In

Rule" of Regulation E. 12 C.F.R. §1005.17.  The Opt In Rule states "a financial institution . . .

shall not assess a fee or charge on a consumer's account for paying an ATM or one-time debit card

transaction pursuant to the institution's overdraft service, unless the institution: (i) [p]rovides the

consumer with a notice in writing [the opt-in contract] . . . describing the institution's overdraft service" and (ii) "[p]rovides a reasonable opportunity for the consumer to affirmatively consent" to enter into the overdraft program. *Id.* The disclosure "shall be clear and readily understandable." 12 C.F.R. §205.4(a)(1). To comply with the affirmative consent requirement, a financial institution must provide segregated writing of its overdraft practices that are accurate, non-misleading and truthful and that conforms to 12 C.F.R. § 1005.17 prior to the opt-in, and must provide a reasonable opportunity to opt-in. The affirmative consent must be provided in a way mandated by 12 C.F.R. § 1005.17, and the financial institution must provide confirmation of the opt-in in a manner that conforms to 12 C.F.R. § 1005.17.

77. SLFCU failed to comply with Regulation E, 12 C.F.R. § 1005.17, which requires affirmative consent before a financial institution is permitted to assess overdraft fees against customers' accounts through an overdraft program for ATM and non-recurring debit card transactions. SLFCU has failed to comply with the 12 C.F.R. § 1005.17 opt-in requirements, including failing to provide its customers with a valid description of the overdraft program which meets the strictures of 12 C.F.R. § 1005.17 because, *inter alia*, it states that an overdraft occurs when there is not enough money in the account to cover a transaction but SLFCU pays it anyway, when in fact SLFCU assesses overdraft fees when there is enough money in the account to pay for the transaction at issue.

78. As a result of violating Regulation E's prohibition against assessing overdraft fees on ATM and non-recurring debit card transactions, SLFCU has harmed Plaintiff and the Class. Due to SLFCU's violation of Regulation E (12 C.F.R. § 1005.17), Plaintiff and members of the Class are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1693m.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

A.    Compensatory damages on all applicable claims and in an amount to be proven at trial;

B.    An order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

C.    An order enjoining the wrongful conduct alleged herein;

D.    Costs;

E.    Pre-judgment and post-judgment interest as provided by law;

F.    Attorneys' fees; and

G.    Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 9, 2020

Respectfully submitted,

   /s/ Marcus J. Rael, Jr.

Sergei Lemberg (*pro hac vice* application forthcoming)
Stephen Taylor (*pro hac vice* application forthcoming)
Lemberg Law, LLC
43 Danbury Road
Third Floor
Wilton, CT 06897

23

Telephone: (203) 653-2250
Email: slemberg@lembeglaw.com
Email: staylor@lemberglaw.com

*and*

Marcus J. Rael, Jr.
Robles, Rael & Anaya, P.C.
500 Marquette Ave NW Suite 700
Albuquerque, NM 87102
Telephone: (505) 242-2228
Email: Marcus@roblesrael.com